NO. 4-01-0681

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

ANTHONY JENNINGS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Ford County

No. 98CF6

Honorable

Harold J. Frobish,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1998, defendant, Anthony Jennings, pleaded guilty to one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 1998)).  Defendant's guilty plea was "open," meaning that no agreement existed between defendant and the State regarding defendant's sentence or the dismissal of other pending charges.  In August 1998, the trial court sentenced him to 60 years in prison.

In September 2000, defendant 
pro
 
se
 filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2000)), alleging, in pertinent part, that he received ineffective assistance of trial counsel when his court-appointed counsel, Harvey Welch, ignored his request and failed to file a motion to reconsider sentence and a notice of appeal.  The trial court later appointed postconviction counsel, Wayne Smith, to represent defendant.  Smith did not file an amended postconviction petition
.

In May 2001, the State filed a motion to dismiss defendant's 
pro
 
se
 postconviction petition.  In August 2001, Smith filed a response to the State's motion and supplemented defendant's postconviction petition with a September 1999 letter from Welch to defendant's mother.  Following an August 2001 nonevidentiary hearing, the trial court granted the State's motion.

Defendant appeals, arguing that (1) Smith failed to provide a reasonable level of assistance because he failed to comply with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)); and (2) the trial court erred by dismissing his ineffective assistance of trial counsel claim without holding an evidentiary hearing.  Because we agree with defendant's first argument, we reverse and remand for further proceedings.  

I. BACKGROUND

In February 1998, the State charged defendant, who was then 16 years old, with one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 1998)), alleging that defendant shot and killed Craig Little without legal justification and with the intent to kill.  At the July 1998 guilty plea proceedings, Welch informed the trial court that defendant had agreed to enter an open guilty plea.  The court informed defendant that he had been charged with committing the offense of first degree murder, which normally carried a penalty of 20 to 60 years in prison.  The court also informed defendant that he could be eligible for an extended-term sentence of 60 to 100 years in prison or a sentence of natural life in prison if certain aggravating factors existed. 

The State then provided the following factual basis for defendant's guilty plea.  Sometime prior to February 17, 1998, defendant, Angela Little, who was Craig's estranged wife, and Carl Dueringer, Angela's then-boyfriend, agreed that Angela would pay defendant to murder Craig.  On the evening of February 17, 1998, defendant and Dueringer dropped off Angela at an acquaintance's residence.  Dueringer gave defendant a shotgun that Dueringer had obtained from his employer, and Dueringer and defendant drove to a location near Craig's residence.  Defendant then got out of the car, walked to Craig's residence, and knocked on the back door.  When Craig opened the door, defendant shot him once in the chest, causing him to fall backward down a stairwell.  (Although Craig was mortally wounded, he did not die immediately.)  Defendant entered Craig's residence and tried to find something to steal to make it appear as though a robbery had occurred.  Defendant ultimately left the residence without taking anything and returned to the car that Dueringer was driving.

The trial court accepted the State's factual basis, found that defendant had knowingly and voluntarily entered his guilty plea, and accepted the plea.

At defendant's August 1998 sentencing hearing, the trial court considered (1) the presentence investigation report (PSI), (2) a taped telephone conversation between defendant and Angela shortly after the murder, (3) defendant's confession to police, (4) a psychological evaluation of defendant conducted by Marty Traver, a clinical psychologist, and (5) victim-impact statements from Craig's mother, father, brother, and cousin.

  The PSI indicated, in pertinent part, as follows:  (1) following his parents' divorce when he was eight years old, defendant had little or no parental supervision; (2) defendant dropped out of high school in the tenth grade; (3) he drank alcohol and smoked marijuana occasionally; (4) he worked full- time at McDonald's and was "never a problem" until he was fired the day after the murder for using foul language; (5) he had no prior criminal record; (6) he was remorseful and reported having nightmares about the murder; and (7) he agreed to murder Craig because (a) he believed that Craig was abusing Angela, and (b) Angela promised to give him money.  

During the taped telephone conversation between defendant and Angela, defendant told her that after having shot Craig, he told Craig to "[q]uit crying you fuckin [
sic
] pussy."  Later in the conversation, defendant told Angela that after leaving Craig's residence, he was so upset he started shaking and could not hold onto anything.  

Defendant's confession indicated the following:  (1) during a two-week period prior to the murder, Angela and Dueringer persistently asked defendant to murder Craig because Craig was beating Angela and Angela wanted Craig's life insurance money; (2) on the evening of the murder, defendant twice told Angela and Dueringer that he did not want to kill Craig, but they told him that he could do it and it was too late to back out; (3) after shooting Craig, defendant "stood there, frightened [and] scared" and then "tried to put [Craig] out of his misery" by shooting him in the head, but the shotgun misfired; (4) before leaving Craig's residence, defendant told Craig that he was sorry and he did not want to shoot him, but "they made [him] do it"; and (5) the primary reason he murdered Craig was because Angela told him that Craig beat her. 

Traver's psychological evaluation of defendant indicated, in pertinent part, as follows:  (1) defendant was of average intelligence, emotionally immature, and appeared to have poor judgment; (2) he regretted murdering Craig; (3) he had some psychopathic tendencies, including lack of remorse and empathy, which were still "in the developing stage"; and (4) he had "weak ego strength" and lacked a "well-formed sense of identity." 

A former Ford County correctional officer testified on defendant's behalf that defendant had been a model inmate during his incarceration at the county jail.  Two of defendant's friends testified that he was always very polite and helpful.  Margaret Robinson, defendant's mother, testified that defendant never had any "extreme discipline problems."  Defendant stated in allocution that (1) he was sorry for murdering Craig; and (2) if he could give his life to bring back Craig, he would do it.

After considering the evidence presented, defendant's statement in allocution, and counsels' recommendations, the trial court sentenced defendant to 60 years in prison. 

On March 15, 1999, defendant sent a letter to the trial court, requesting that the court appoint counsel to represent him on appeal because his family could not afford to hire an attorney.  On March 26, 1999, the court sent a letter in response to defendant, with copies sent to Welch and the Ford County State's Attorney, advising defendant that the time for filing a direct appeal had passed and he could seek relief under the Act.  

In December 1999, defendant wrote to the Ford County circuit clerk, requesting a copy of his transcripts and claiming that he wanted to withdraw his guilty plea due to Welch's ineffective assistance, violations of his constitutional rights, and the trial court's alleged conflict of interest.  Attached to his letter was a 
pro
 
se
 notice of appeal.  This court granted defendant leave to file a late notice of appeal and appointed the office of the State Appellate Defender (OSAD) to represent him.  

On February 11, 2000, defendant wrote a letter to the trial court, stating that Welch "would not file for [defendant's] appeal" and requesting his transcripts and transcripts of Angela's trial.  The court forwarded that letter to OSAD.  On February 25, 2000, defendant 
pro
 
se
 filed a motion to reduce his sentence, alleging, in pertinent part, that his sentence was excessive in light of his age, lack of a prior criminal record, and the lower sentences imposed on Angela and Dueringer, his two adult codefendants.  (The court did not rule upon that motion.)  In April 2000, this court granted defendant's motion to dismiss his appeal because no postplea motions had been timely filed.  
People v. Jennings
, No. 4-99-1045 (April 26, 2000) (dismissed on appellant's motion).

In September 2000, defendant 
pro
 
se
 filed a postconviction petition, alleging, in pertinent part, that he received ineffective assistance of trial counsel when Welch ignored his request and failed to file a motion to reconsider sentence and a notice of appeal.  Attached to his petition were the following:  (1) defendant's affidavit, in which he averred that (a) after being sentenced, he asked Welch to file a motion to reconsider sentence, and Welch replied that he would "[g]et back" to defendant about his request; and (b) after a November 1999 hearing regarding whether defendant would be transferred to an adult correctional facility, defendant again told Welch that he wanted to appeal, and Welch replied that the proceedings were "[a]ll over with" and Welch would not be appealing defendant's case; and (2) Robinson's affidavit, in which she averred that in early 1999, she contacted Welch about defendant's appeal, and Welch replied that the time for filing an appeal had passed.  In September 2000, the trial court appointed Smith to represent defendant.  Smith did not file an amended postconviction petition
.

In May 2001, the State filed a motion to dismiss defendant's 
pro
 
se
 postconviction petition, arguing, in pertinent part, that (1) "[d]ecisions made by [defendant and Welch] were matters of pre[]trial and sentencing strategy, and not evidence of ineffective assistance of counsel"; and (2) defendant's "allegations that [Welch] failed to follow his directions[] are supported only by his own affidavit and that of his mother, and are not documented or corroborated in any other manner."  In August 2001, Smith filed a response to the State's motion.  He also supplemented defendant's petition with a September 27, 1999, letter from Welch to Robinson, in which Welch (1) apologized for his tardy reply to her inquiry about appealing the length of defendant's sentence as compared to Angela and Dueringer's sentences, and (2) stated that "[a]n appeal of sentence would be fruitless and is now too late."  Following an August 2001 nonevidentiary hearing, the trial court granted the State's motion and dismissed defendant's postconviction petition.
 

This appeal followed.     

II. POSTCONVICTION COUNSEL'S FAILURE TO COMPLY 

WITH SUPREME COURT RULE 651(C)

Defendant argues that Smith failed to provide a reasonable level of assistance because he failed to fully comply with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)).  The State concedes that Smith did not file a Rule 651(c) certificate of compliance.  However, the State contends that (1) the record shows that Smith fully complied with Rule 651(c), and (2) defendant was not prejudiced by Smith's performance.  We agree with defendant.

Because the right to counsel in postconviction proceedings is wholly statutory, postconviction petitioners are entitled only to the level of assistance provided by the Act.  
People v. Turner
, 187 Ill. 2d 406, 410, 719 N.E.2d 725, 727-28 (1999).  It is well settled that the Act requires counsel to provide a "reasonable level of assistance" to a petitioner in a post-conviction proceeding.  (Emphasis omitted.)  
People v. Owens
, 139 Ill. 2d 351, 364, 564 N.E.2d 1184, 1189 (1990); see also 
People v. Moore
, 189 Ill. 2d 521, 541, 727 N.E.2d 348, 358-59 (2000).  To assure that reasonable level of assistance, Supreme Court Rule 651(c) requires that postconviction counsel (1) consult with the defendant either by mail or in person and ascertain upon what basis the defendant claims a constitutional deprivation, (2) examine the record of the trial court proceedings, and (3) make any necessary amendments to the defendant's 
pro
 
se
 postconviction petition.  134 Ill. 2d R. 651(c).  Counsel may file a certificate to show that counsel complied with the requirements of Rule 651(c), or the record as a whole may demonstrate that postconviction counsel complied with those requirements.  
People v. Richmond
, 188 Ill. 2d 376, 380, 721 N.E.2d 534, 536-37 (1999). 

As the State concedes, Smith failed to file a Rule 651(c) certificate of compliance. "We are not entitled to assume counsel complied with Rule 651(c).  There must be an explicit showing in the record that he did, in fact, fulfill the rule's requirements."  
People v. Carter
, 223 Ill. App. 3d 957, 962, 586 N.E.2d 835, 838 (1992).  It is undisputed that Smith complied with the first requirement of Rule 651(c)--namely, that counsel consult with the defendant.  However, the record does not explicitly show that Smith complied with the remaining requirements of the rule.

A. Postconviction Counsel's Examination of the Trial Record

Defendant contends that the record fails to show that Smith examined the record of the trial court proceedings.  We agree.

Having thoroughly reviewed the record, we conclude that it does not explicitly show that Smith examined the trial record.  Smith's itemized bill, which was attached to his petition for attorney fees, does not indicate that counsel reviewed any portion of the trial record.  Although that bill shows that on one occasion, counsel spent fewer than 12 minutes reviewing the "[f]ile," nothing in the record indicates that that file included the trial record.  The State's assertion that Smith examined the pertinent portions of the trial record because defendant "presumably provided counsel with the transcript of his guilty plea and sentencing, which had been sent to [defendant] January 13, 2000," constitutes nothing more than speculation.  Such speculation is obviously insufficient to show that Smith provided the level of assistance required by Rule 651(c) (134 Ill. 2d R. 651(c)).    

B. Postconviction Counsel's Failure To Make Necessary 

Amendments to Defendant's 
Pro
 
Se
 Petition      

In addition, we note that Smith failed to make any amendments to defendant's 
pro
 
se
 petition.  Postconviction counsel is not required to amend a petitioner's 
pro
 
se
 postconviction petition.  
Turner
, 187 Ill. 2d at 412, 719 N.E.2d at 729.  However, Rule 651(c) clearly requires that postconviction counsel make "any amendments to the petitions filed 
pro
 
se
 that are necessary for an adequate presentation of petitioner's contentions."  134 Ill. 2d R. 651(c); see also 
People v. Johnson
, 154 Ill. 2d 227, 237-38, 609 N.E.2d 304, 312 (1993) (postconviction counsel must shape the petitioner's contentions in a 
pro
 
se
 petition into "appropriate legal form").  

In this case, Smith failed to make amendments to defendant's 
pro
 
se
 petition that were necessary for an adequate presentation of defendant's contentions.  In particular, he failed to amend (1) defendant's claim of Welch's ineffective assistance for failing to perfect an appeal by alleging grounds that could have been raised in a motion to reconsider defendant's sentence, and (2) the petition to allege a disparate sentencing claim.

1. 
Failure
 
To
 
Amend
 
Defendant's
 
Ineffective
 
Assistance
 
Claim
 

We conclude that Smith failed to make an amendment to defendant's 
pro
 
se
 petition that was necessary for an adequate presentation of defendant's contentions when he failed to amend defendant's ineffective assistance claim by alleging grounds that could have been raised in a motion to reconsider defendant's sentence.  

Our supreme court has held that to merit an evidentiary hearing on a postconviction claim that trial counsel provided ineffective assistance by failing to perfect an appeal, a defendant is required to provide "some explanation" of the grounds that could have been raised in the postplea motion.  
People v. Edwards
, 197 Ill. 2d 239, 258, 757 N.E.2d 442, 453 (2001). 

In 
Roe v. Flores-Ortega
, 528 U.S. 470, 477, 145 L. Ed. 2d  985, 994-95, 120 S. Ct. 1029, 1034 (2000), the United States Supreme Court held that the familiar 
Strickland
 "test applies to claims *** that counsel was constitutionally ineffective for failing to file a notice of appeal."  To establish the performance prong of 
Strickland
, the defendant (1) must demonstrate that his attorney ignored the defendant's specific instruction or request to file a notice of appeal; or (2) if his attorney did not consult with the defendant about taking an appeal and make a reasonable effort to ascertain the defendant's wishes, the defendant must demonstrate that counsel's failure to consult with him constituted deficient performance.  
Flores-Ortega
, 528 U.S. at 478, 145 L. Ed. 2d  at 995-96, 120 S. Ct. at 1035.  To establish the prejudice prong of 
Strickland
, the defendant must demonstrate a reasonable probability that counsel's deficient performance "actually cause[d] the forfeiture of the defendant's appeal."  
Flores-Ortega
, 528 U.S. at 484, 145 L. Ed. 2d  at 999, 120 S. Ct. at 1038.  In that regard, the Supreme Court stated as follows:

"We *** conclude here that it is unfair to 
require
 an indigent, perhaps 
pro
 
se
, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal."  (Emphasis in original.)  
Flores-Ortega
, 528 U.S. at 486, 145 L. Ed. 2d  at 1001, 120 S. Ct. at 1040.  

In 
Edwards
, 197 Ill. 2d at 253, 757 N.E.2d at 450, our supreme court relied on 
Flores-Ortega
 in holding that "a 
pro
 
se
 defendant, even if he pled guilty, cannot be 
required
 to demonstrate how his appeal would have been successful in order to establish that he was prejudiced by his attorney's failure to pursue a requested appeal."  (Emphasis in original.)  In limiting its holding to the dismissal of a postconviction petition at the first stage of the postconviction process, the 
Edwards
 court noted that at the second stage of postconviction proceedings, the defendant (who will then be represented by an attorney) must make a substantial showing that (1) he told his trial counsel to file the necessary postplea motion (in that case, a motion to withdraw guilty plea); and (2) counsel was constitutionally ineffective for failing to do so.  
Edwards
, 197 Ill. 2d at 257-58, 757 N.E.2d at 453.  The court explained that "[s]uch a showing will necessarily entail some explanation of the grounds that could have been presented in the motion to withdraw the plea."  
Edwards
, 197 Ill. 2d at 258, 757 N.E.2d at 453; see also 
People v. Hughes
, 329 Ill. App. 3d 322, 325-26, 767 N.E.2d 958, 961 (2002) (in which this court held that in accordance with 
Edwards
, at the third stage of postconviction proceedings, a defendant who alleges that his trial counsel provided ineffective assistance by refusing to file the necessary postplea motion and perfect an appeal is required to present evidence of the grounds that could have been raised in the postplea motion). 

In this case, Smith failed to amend defendant's ineffective assistance claim to include an allegation of the grounds that Welch could have raised in a motion to reconsider defendant's sentence.  As discussed, such an allegation was an essential element of defendant's claim.  This is not a mere theoretical failing on counsel's part, given that the State contends in its brief to this court that Smith had nearly 11 months to amend defendant's 
pro
 
se
 petition but did not do so.  Had Smith reviewed the pertinent portions of the trial record, he easily could have amended defendant's 
pro
 
se
 petition to allege grounds that could have been raised in a motion to reconsider defendant's sentence, including the following:  (1) that defendant's sentence was excessive, in light of mitigating factors, including (a) defendant's young age, (b) his difficult upbringing, (c) his culpability as compared to Angela's and Dueringer's, (d) his willingness to plead guilty in an open plea, (e) his willingness to testify against Angela and Dueringer, (f) his lack of a prior criminal record, and (g) his positive adjustment to incarceration; and (2) that the trial court failed to adequately consider defendant's rehabilitative potential.          

2. 
Failure
 
To
 
Allege
 
a
 
Disparate
 
Sentencing
 
Claim
  

In addition, we agree with defendant that under the particular circumstances of this case, Smith failed to make an amendment to defendant's 
pro
 
se
 petition that was necessary for an adequate presentation of defendant's contentions when he failed to amend the petition to allege a disparate sentencing claim.  See 
People v. Caballero
, 179 Ill. 2d 205, 216, 688 N.E.2d 658, 663 (1997) (arbitrary and unreasonable disparity between the sentences of similarly situated codefendants is impermissible and can serve as a basis for relief under the Act). 

We are mindful that a defendant is not entitled to the advocacy of postconviction counsel for purposes of "exploration, investigation[,] and formulation of potential claims."  
People v. Davis
, 156 Ill. 2d 149, 163, 619 N.E.2d 750, 758 (1993).  Although defendant's 
pro
 
se
 postconviction petition did not explicitly claim that an arbitrary and unreasonable disparity existed between his 60-year sentence and Angela's 56-year sentence, the substance of his ineffective assistance claim and the allegations therein clearly showed that defendant wanted to challenge his sentence.  Indeed, at the August 2001 hearing on defendant's postconviction petition, Smith acknowledged that the petition effectively raised a challenge to defendant's sentence.  Further, this was not a case where Smith would have had to comb through the entire record to discern this claim.  Instead, the September 1999 letter from Welch to defendant's mother, which Smith used to supplement defendant's petition, suggested a disparate sentencing claim by specifically stating that "while it is true that [defendant] received the most time, you must remember that all defendants were sentenced by different judges."  (The record shows that in January 1999, Angela, who was by all accounts the primary moving force behind Craig's murder, received a 56-year sentence for first degree murder.)  See 
People v. Banks
, 241 Ill. App. 3d 966, 984, 609 N.E.2d 864, 876 (1993) (the fact that a different judge sentenced the defendant does not preclude him from raising a disparate sentencing claim).  Under these particular circumstances, Smith should have amended defendant's 
pro
 
se
 petition to allege a disparate sentencing claim. 

Accordingly, given the totality of the circumstances of this case, we conclude that Smith's performance was unreasonable and fell below the level of assistance required by Rule 651(c) (134 Ill. 2d R. 651(c)). 

In so concluding, we reject the State's argument that we should reject defendant's contention because he was not prejudiced by Smith's performance.  In essence, the State contends that because the disparate sentencing claim lacks any merit, Smith's failure to amend defendant's 
pro
 
se
 petition did not prejudice defendant.  In 
Turner
, 187 Ill. 2d at 415-16, 719 N.E.2d at 730-31, the supreme court rejected essentially the same argument, stating, in pertinent part, as follows:

"[I]t is improper to affirm the dismissal of a post[]conviction petition when this court finds that post[]conviction counsel's performance was so deficient that it amounts to virtually no representation at all.  See 
People v. Tyner
, 40 Ill. 2d 1, 2-4[, 238 N.E.2d 377, 377-78] (1968) (reversing the dismissal of a post[]conviction petition without an evidentiary hearing where appointed counsel elected to stand on the original 
pro
 
se
 petition and did not consult with the petitioner or examine the record even though none of the claims in the 
pro
 
se
 petition appeared to require an evidentiary hearing).  This court will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)."  

III. CONCLUSION

For the reasons stated, we reverse the trial court's dismissal of defendant's postconviction petition and remand with directions that the trial court allow defendant the opportunity to replead his postconviction petition with the assistance of counsel, as required by Rule 651(c) (134 Ill. 2d R. 651(c)).

Reversed and cause remanded with directions.

KNECHT, P.J., and MYERSCOUGH, J., concur.