2020 IL App (1st) 162722-U

No. 1-16-2722

Order filed March 17, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2008 C6 61809 |
| | ) | |
| BENNIE GUNN, | ) | The Honorable |
| | ) | Michele McDowell Pitman, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's dismissal, upon the State's motion, of defendant's postconviction petition is affirmed where postconviction counsel filed a Rule 651(c) certificate and defendant did not overcome the presumption that he received reasonable assistance of counsel.

¶ 2    Defendant Bennie Gunn appeals from the dismissal, upon the State's motion, of his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)). On appeal, he contends that he was denied the reasonable assistance of postconviction

counsel in violation of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) because counsel failed to amend defendant's *pro se* petition to allege that he was denied the effective assistance of counsel when trial counsel impeached defendant's credibility with inadmissible prior convictions, and when appellate counsel failed to raise this claim on direct appeal. We affirm.

¶ 3     Following a jury trial, defendant was found guilty of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2008)) and sentenced to 10 years in prison.

¶ 4     At trial, Cook County sheriff's investigator Gutter testified that on July 31, 2008, he executed a search warrant at an address on Marseilles Lane in Hazel Crest.[1] Defendant was not present inside the house, but three juveniles were. Officers located a locked back bedroom and broke the lock to enter. They searched the room and found men's clothing, a photograph of defendant with two women, and a gun box containing a loaded firearm and a box of ammunition. Officers also recovered a certificate of title, an Illinois "vehicle registration ID card," a checkbook, and traffic citations, all bearing defendant's name and the Marseilles Lane address. Later that day, after defendant was taken into custody in an Aldi parking lot, Gutter spoke to him at a police station. Defendant stated that he lived in the back bedroom at the Marseilles Lane address and knew that the firearm was in the closet, but that it belonged to someone else. Defendant's statement was memorialized in writing, and defendant signed it. The statement was read to the jury. In the statement, defendant stated that he lived at the Marseilles Lane address and "occasionally" lived at a South Carpenter Street address.

¶ 5     Cook County sheriff's detective Robert Byrnes testified that defendant exited a vehicle just before his arrest. Byrnes recovered keys from the vehicle and asked defendant if the keys belonged

---

[1]Gutter's given name is not included in the report of proceedings.

to him. Defendant answered affirmatively. Byrnes used these keys to unlock both the front door of the Marseilles Lane residence and the bedroom from which the firearm was recovered.

¶ 6    The State then entered a stipulation that defendant had been convicted of two prior qualifying offenses in case numbers 94 C6 61054 and 97 CR 1731.[2]

¶ 7    Defendant testified that in July 2008, he resided on South Carpenter and acknowledged that his Illinois identification card, issued by the Illinois Secretary of State on June 14, 2007, bore that address. He also acknowledged prior convictions for "aggravated discharge" in 1994, delivery of a controlled substance in 1997, and possession of a controlled substance in 2007. He denied telling officers that the keys recovered from the Dodge were his. He explained that the traffic citations had the wrong address, the checks were from an old account, and he no longer had the vehicle associated with the paperwork recovered from the Marseilles Lane residence. He also testified that the traffic citations were recovered from his wallet rather than the bedroom. Defendant denied making a statement to police that he lived at the Marseilles Lane residence, or that he knew about the firearm.

¶ 8    During cross-examination, defendant denied being advised of the *Miranda* rights, signing a *Miranda* waiver, and making a statement. He acknowledged that a probation agreement dated January 30, 2008, and a bond slip from February 3, 2009, both bore the Marseilles Lane address. Although he signed these forms, he did not fill them out. Defendant also admitted that bond slips from April 8, 2008 and July 21, 2008, bore the Marseilles Lane address. Defendant clarified that he was previously convicted of aggravated discharge of a firearm.

---

[2]Although the information and the transcript list the conviction as 97 CR 1731, the presentence investigation lists the conviction as 97 CR 1751.

¶ 9 On redirect, defendant testified that he did not write the Marseilles Lane address on the traffic citations; rather, the officer did. He did not fill out the bond or probation slips, but signed them. He then identified a bond slip dated March 8, 2010, which bore the South Carpenter address. Defendant testified that the firearm involved in the 1994 aggravated discharge of a firearm case was not the same firearm involved in this case, which he had never seen.

¶ 10 Ellie Lillard, defendant's mother, testified that defendant had lived with her on South Carpenter since 2007.[3] Lillard also owned the Marseilles Lane address, but defendant did not live there in 2008. Between 2004 and 2007, defendant lived with her "off and on" while he helped Lillard's sister Rosemarie, who lived at the Marseilles Lane address.

¶ 11 Eugene Scott, Rosemarie's fiancé, testified that in July 2008 he lived at the Marseilles Lane address and stayed in the back bedroom. The door was kept locked because there was a firearm in the bedroom. Scott denied telling the State's investigator that defendant stayed in the back bedroom or that defendant's girlfriend sometimes stayed overnight with defendant. Takiyah Childress, defendant's girlfriend, testified that he stayed at her home in University Park "almost everyday" but that his "residence" was on South Carpenter.

¶ 12 In rebuttal, the State presented Hazel Crest police detective Beard, who testified that he issued two traffic citations to defendant on July 16, 2008, and defendant stated that he lived at the Marseilles Lane address.[4] The State's investigator Joseph Thomas then testified that Scott stated that Scott occasionally lived at the Marseilles Lane address and that defendant had a key to the back bedroom, stayed in that room, and kept clothes there.

_____

[3]Defendant's mother identified herself as Ella L'Tanya Miller at the sentencing hearing.
[4]Beard's given name is not included in the report of proceedings.

¶ 13   Defendant's probation officer, Debra Francis, testified that she visited the Marseilles Lane address on February 14, 2008, and a female relative confirmed that defendant lived there. During an intake meeting on February 27, 2008, defendant stated that he lived at the Marseilles Lane address. Defendant continually stated that he lived at the Marseilles Lane address until February 9, 2009, when he stated he moved to South Carpenter.

¶ 14   During deliberations, the jury sent multiple notes to the court. When the court received the first note, the court observed that the State and trial counsel were present, but that defendant was not. Trial counsel stated that he had spoken with defendant's mother, who was with defendant, and advised defendant that the jury had a question. The next time the jury sent a question, the court noted that trial counsel waived defendant's presence. After several more notes were sent, the court asked trial counsel whether he had contacted defendant. Trial counsel answered in the affirmative and stated that defendant was in the vestibule. The jury found defendant guilty of armed habitual criminal, and following a hearing, the court sentenced him to 10 years in prison.

¶ 15   On direct appeal, defendant contended that the trial court committed reversible error when it failed to respond to the jury's question about the law regarding the element of knowing possession and that he was denied effective assistance when counsel failed to offer an instruction in response to the jury's question. We affirmed. See *People v. Gunn*, 2013 IL App (1st) 111164-U.

¶ 16   On March 10, 2014, defendant filed a *pro se* postconviction petition alleging that he was denied his constitutional right to be present during the discussion of the jury's questions and that the trial court erred when it permitted trial counsel to waive defendant's presence. The petition further claimed that defendant was denied the effective assistance of counsel when counsel (1)

withdrew motions to quash arrest and suppress evidence and statements; (2) failed to challenge the search warrant; (3) failed to offer jury instructions, including one on the definition of "knowingly possessed"; and (4) failed to ensure that defendant was present during the discussion of the jury's notes. The petition also asserted that defendant's fourth amendment rights were violated when the search warrant at issue was for "drugs," rather than a gun, the State "tr[ied] to constantly [*sic*] place defendant" at the Marseilles Lane address, and trial counsel failed to raise "these issues." The petition further alleged that Detective Beard impeached himself and committed perjury while testifying about the address defendant gave at a traffic stop when that testimony was hearsay, and that defendant could not have been found guilty of armed habitual criminal because the statute does not reference constructive possession and "there were no fingerprints" on the firearm. The petition finally claimed that the appellate court's determination that the evidence at trial was overwhelming could not be "reconciled" with the jury's request for clarification on a "point of law," and that defendant was prejudiced at trial and on direct appeal. Attached to the petition were, in pertinent part, the affidavits of defendant and his cousin Ashaunka Lillard, and a motion to quash arrest and suppress evidence.[5]

¶ 17    In his affidavit, defendant averred that he was falsely accused and wrongfully convicted. Ashaunka averred that on July 31, 2008, she and her siblings were present at the Marseilles Lane address, but defendant was not, that defendant had not lived at the Marseilles Lane address since 2007, and that he lived on South Carpenter.

¶ 18    The circuit court docketed the petition and appointed postconviction counsel. On August 7, 2015, postconviction counsel filed a supplemental petition for postconviction relief and a

---

[5]To avoid confusion, we will refer to Ashaunka Lillard by her given name.

certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). The supplemental petition alleged that defendant's right to presence was violated when he was absent and unable to participate while the parties and trial court discussed the jury's notes. The supplemental petition further asserted that defendant was denied the effective assistance of counsel when trial counsel waived defendant's presence during the discussions about the jury notes, and when appellate counsel failed to raise this issue on direct appeal. The supplemental petition also submitted that defendant was denied the effective assistance of appellate counsel by counsel's failure to challenge the sufficiency of the evidence on direct appeal. The State filed a motion to dismiss, which the circuit court granted on October 14, 2016.

¶ 19   On appeal, defendant contends that he was denied the reasonable assistance of postconviction counsel when counsel failed to amend defendant's petition to include a claim that he was denied the effective assistance of counsel when trial counsel "needlessly" impeached defendant with prior convictions and appellate counsel failed to raise this argument on appeal.

¶ 20   The Act provides a procedural mechanism by which a criminal defendant can assert that his conviction resulted from a substantial denial of his constitutional rights. See 725 ILCS 5/122-1 *et seq*. (West 2014). At the second stage of proceedings under the Act, an indigent defendant is appointed an attorney to ensure that his claims are adequately presented. 725 ILCS 5/122-4 (West 2014). Because the right to such representation is statutory, the required level of representation is determined solely by the Act. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Our supreme court has defined the assistance provided for in the Act as a "reasonable" level of assistance. *Id*.

¶ 21   To ensure that defendants are provided reasonable assistance, Rule 651(c) imposes certain requirements upon postconviction counsel. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); *Perkins*, 229

Ill. 2d at 42. Pursuant to the rule, postconviction counsel must (1) consult with the defendant to ascertain his allegations, (2) examine the record of trial proceedings, and (3) amend the *pro se* petition as "necessary for an adequate presentation of [a defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Rule 651(c) does not, however, "require counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).

¶ 22    The filing of a Rule 651(c) certificate creates a presumption that postconviction counsel provided reasonable assistance. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The defendant bears the burden of overcoming this presumption by showing that counsel failed to "substantially comply" with the duties set forth in Rule 651(c). *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 36. Compliance with the rule is reviewed *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 23    Here, postconviction counsel filed a Rule 651(c) certificate, thereby creating a presumption that she provided reasonable assistance. *Jones*, 2011 IL App (1st) 092529, ¶ 23. The certificate stated that postconviction counsel complied with the three requirements of Rule 651(c), and defendant does not contend that the certificate is inadequate. Rather, defendant contends that, despite the certificate, the record demonstrates that postconviction counsel failed to make the appropriate amendments to the petition. Accordingly, it is defendant's burden to demonstrate counsel's failure to substantially comply with the duties imposed by Rule 651(c). *Id.*

¶ 24    Defendant argues that it was objectively unreasonable for postconviction counsel to not amend the *pro se* postconviction petition to include a claim that he was denied the effective assistance of counsel when trial counsel impeached his credibility with prior convictions that were

inadmissible under *People v. Montgomery*, 47 Ill. 2d 510 (1971), and appellate counsel failed to raise this issue on direct appeal.

¶ 25    Postconviction counsel, however, is not required to amend a postconviction petition to add claims not already implicated in the *pro se* petition or to explore or formulate potential claims. *Pendleton*, 223 Ill. 2d at 475-76. Counsel's duties are limited to ascertaining the claims raised in the defendant's petition and shaping those claims into "appropriate legal form." *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993).

¶ 26    In the case at bar, defendant's *pro se* petition alleges numerous denials of the effective assistance of trial counsel. However, the petition does not allege that trial counsel was ineffective in his examination of defendant when he questioned him regarding his prior convictions or that appellate counsel was ineffective for failing to raise this issue on direct appeal. Accordingly, postconviction counsel had no duty to amend defendant's *pro se* petition to add a claim that was not already implicated in the petition. *Pendleton*, 223 Ill. 2d at 475-76.

¶ 27    To the extent defendant contends that this claim was implicated because the petition raised claims of ineffective assistance of trial and appellate counsel and quoted a certain colloquy between defendant and trial counsel, we disagree. Defendant's *pro se* petition quotes this exchange, which occurred on redirect examination:

"Q: [Defendant], the State had you read rephrase what the offense was aggravated discharge in 1994, correct?

A: Yes, sir.

Q: Is that gun [the one recovered in the instant case] anywhere remotely related to that charge?

A: No."

¶ 28    The quoted exchange is included in a portion of the *pro se* petition which alleges that the State violated defendant's fourth amendment rights by "trying" to place defendant at the Marseilles Lane address, and is immediately followed by an argument that Detective Beard's testimony was hearsay and that he committed perjury and impeached himself. There is no mention in the *pro se* petition of *Montgomery*, defendant's credibility, or trial counsel's allegedly deficient questioning.

¶ 29    Based on the forgoing, we cannot agree with defendant's conclusion, raised before this court, that the *pro se* petition "implicitly" alleged that trial counsel was ineffective for impeaching defendant's credibility such that it raised a claim that postconviction counsel was required to "shape" into a claim of ineffective assistance of trial counsel. Postconviction counsel is not required to explore or formulate potential claims (*People v. Davis*, 156 Ill. 2d 149, 163-64 (1993)); rather, counsel's duty is to investigate and properly present the claims raised by the defendant in the petition (*Pendleton*, 223 Ill. 2d at 475).

¶ 30    Here, the *pro se* petition did not argue that counsel's questioning of defendant was deficient or even mention *Montgomery*. We cannot agree with defendant's argument that the quoted testimony, combined with other claims of ineffectiveness of counsel, was an implicit argument that trial counsel improperly impeached defendant with prior convictions that were inadmissible under *Montgomery*. See *People v. Jennings*, 345 Ill. App. 3d 265, 274 (2003) (quoting *Davis*, 156 Ill. 2d at 163) ("a defendant is not entitled to the advocacy of postconviction counsel for purposes of 'exploration, investigation[,] and formulation of potential claims' "). Accordingly, defendant's claim that he was denied the reasonable assistance of postconviction counsel when she did not amend his *pro se* petition to allege that trial counsel improperly impeached him with convictions

that were inadmissible under *Montgomery*, and that appellate counsel failed to challenge that failure on direct appeal, must fail when those claims were not included in defendant's petition. See *Pendleton*, 223 Ill. 2d at 476 (while postconviction counsel "may raise additional issues if he or she chooses, there is no obligation to do so").

¶ 31    For the forgoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 32    Affirmed.