2025 IL App (1st) 231722-U

No. 1-23-1722

First Division
December 15, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 00 CR 18344 |
| LAMAINE JEFFERSON, | ) ) | Honorable Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgement.

**ORDER**

¶ 1    *Held*: Postconviction counsel did not provide unreasonable assistance by failing to amend the defendant's *pro se* postconviction petition.

¶ 2    Defendant Lamaine Jefferson appeals from the second-stage dismissal of his successive petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). Specifically, defendant argues that his postconviction counsel provided unreasonable assistance by failing to amend his *pro se* petition and supplement it with additional

evidence in support of a claim that his 90-year sentence was unconstitutional as applied to him. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Following a 2006 bench trial, defendant was found guilty of felony murder predicated on home invasion, as well as armed robbery and possession of a stolen motor vehicle. The trial evidence established that in June 2000, defendant, who was then 29 years old, was in a romantic relationship with Miranda Howard. At the time, Howard shared an apartment with the victim, Adam Adam. Sometime in June 2000, Howard and defendant discussed stealing Adam's car and money in order to travel to Texas. Defendant recruited his friend James Groleau to help perpetrate the robbery.

¶ 5     On June 10, 2000, defendant entered Adam's apartment building through a window and then let Groleau in the main door. The two then broke into Adam's apartment, "hog-tied" his arms and legs with a vacuum cleaner cord, and tied the rest of the cord around his neck. In a statement to police, defendant claimed that he tested the cord to ensure it was secure but also loose enough for Adam to breathe. Defendant and Groleau then stole Adam's money and disconnected his phone before leaving in Adam's car. Adam was found dead in his apartment four days later. The cause of death was determined to be strangulation.

¶ 6     On June 16, 2000, defendant, Howard, and Groleau were stopped by police while driving Adam's car in Lubbock, Texas. Defendant confessed to authorities in Texas and later in a written statement taken by a Cook County assistant state's attorney.

¶ 7     Based on this evidence, defendant was convicted of armed robbery, possession of a stolen motor vehicle, and felony murder predicated on home invasion.

¶ 8    Prior to sentencing, a presentence investigation (PSI) report was prepared by the Adult Probation Department. The PSI reveals that defendant was a self-described "average student" who dropped out in the tenth grade because he "was no longer interested in attending school." As a juvenile, he received probation for aggravated criminal sexual assault. Defendant also received juvenile probation for residential burglary but was committed to the Illinois Department of Corrections after a probation violation. As an adult, defendant was convicted of second degree murder in 1994 and sentenced to 10 years in prison.

¶ 9    The PSI further states that defendant was raised on the south side of Chicago by his mother and stepfather, whom his mother married when defendant was three years old. Defendant claimed that from ages 5 to 13 he was sexually abused by his stepfather's brother. Defendant denied reporting the abuse to anyone or undergoing any type of mental health treatment for it. He denied having any past or present mental illnesses or ever being referred for any type of mental health services. Defendant described himself as a "drug addict" who consumed $500 worth of crack cocaine every day prior to his arrest.

¶ 10    At the sentencing hearing, the parties stipulated that defendant had a pending case for possession of cannabis in a penal institution where a correctional officer discovered a total of 10.3 grams of marijuana hidden on defendant's person. The State also presented a passionate victim impact statement from the victim's brother, Abdel Adam.

¶ 11    In mitigation, the defense tendered a 16-page evaluation report prepared by forensic psychologist Dr. Matthew Mendel. In preparing his report, Dr. Mendel interviewed defendant, members of defendant's family, and the Department of Children and Family Services (DCFS) caseworker assigned to defendant during his teenage years. Dr. Mendel also reviewed numerous documents from various sources such as DCFS records, psychotherapy notes from the Cook

County Hospital, and a 1991 psychological evaluation done for the Cook County Department of Corrections by Dr. Terry Lizzadro. Additionally, Dr. Mendel administered the Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-II), a psychological test designed to diagnose mental health conditions.

¶ 12    Dr. Mendel's report painted a horrific picture of defendant's childhood, which was marked by physical abuse by his stepfather and sexual abuse by at least three men, including two of his stepfather's brothers. By age 13, defendant began to make money by engaging in prostitution with men "consistently." Around that time, defendant became involved with DCFS after molesting a 9-year-old boy. At age 16, defendant was sent to a Minnesota treatment center for sexual offenders. It was there that defendant mentioned being sexually abused for the first time. His mother initially believed him, but later changed her mind, which defendant took as a "devastating, overwhelming betrayal." Defendant was eventually expelled from the treatment center for "defiant and rule-breaking behaviors" and returned to the Illinois Department of Corrections. In 1994, when defendant was 23 years old, he was convicted of second-degree murder. Defendant claimed that he accidentally strangled the victim while high on drugs and was "surprised the man had died."

¶ 13    Dr. Mendel's report indicates that the MMPI-II showed that high degrees of anger, impulsiveness, and unpredictability caused defendant to "act out in socially unacceptable ways." Defendant also exhibited several personality traits that "lower his adaptability" and held "a number of unusual, bizarre ideas that suggest some difficulties with his thinking." However, Dr. Mendel opined that defendant was able to "distinguish right from wrong" and was not "profoundly cut off from reality."

¶ 14    Following the parties' arguments, the trial court commented that it considered in aggravation defendant's criminal history, the facts of the present case, and the need for "protection

of the public." In mitigation, the court considered defendant's "atrocious" upbringing involving "numerous instances of sexual abuse." The court also observed Dr. Mendel's conclusion that defendant had issues with anger and impulsiveness that made him partial to aggressive and socially unacceptable outbursts. On that note, the court commented that "[i]t is clear that this defendant for whatever reason has in the past shown no indication of ability to comply with the law[]." Ultimately, the court imposed an aggregate sentence of 90 years in prison—a 60-year term for the felony murder to run consecutively to a 30-year term for armed robbery. Defendant also received 7 years in prison for possession of a stolen motor vehicle to run concurrent to the other sentences.

¶ 15    The court subsequently denied defendant's motion to reconsider his sentence, citing defendant's "atrocious [criminal] background" and "degree of participation in the offense."

¶ 16    On direct appeal, this court affirmed defendant's convictions and sentence over his contention that the State failed to prove home invasion beyond a reasonable doubt. *People v. Jefferson*, No. 1-07-2005 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 17    In June 2010, defendant filed his initial postconviction petition, arguing that the trial court violated his due process rights in various ways, that his appellate counsel rendered ineffective assistance by making "no effort to contradict the prosecution's case," and that the evidence against him was insufficient. The circuit court dismissed the petition as frivolous and patently without merit. This court affirmed the dismissal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).

¶ 18    On September 26, 2019, defendant filed a motion for leave to file the successive postconviction petition that is the subject of this appeal. Defendant claimed that his 90-year sentence was a *de facto* life sentence and unconstitutional as applied to him under the eighth and fourteenth amendments to the United States Constitution and the proportionate penalties clause of the Illinois Constitution because the sentencing court did not consider that he "suffered with an

intellectual disability [and] an IQ below 60." Similarly, defendant asserted that his trial and appellate counsels were ineffective for failing to challenge the constitutionality of his sentence. In particular, defendant relied heavily on this court's decision in *People v. Coty*, 2018 IL App (1st) 162383, ¶ 86 (*Coty I*), wherein we found a 50-year sentence violated the proportionate penalties clause where the sentencing court did not consider the defendant's intellectual disability and its attendant characteristics, and also on *Miller v. Alabama*, 567 U.S. 460 (2012). Defendant also asserted that he established cause and prejudice to file a successive petition because neither *Coty* nor *Miller* had been decided at the time he filed his initial petition.

¶ 19    Attached to defendant's petition were affidavits from himself, his brother, and his stepfather. All three affidavits similarly aver that defendant suffered from an intellectual disability since early childhood and was "in and out of mental institutions" for most of his early life. The affidavits also stated that defendant received "poor grades" in school and was at one point tested to have an IQ below 60.

¶ 20    The circuit court granted defendant leave to file his successive petition and appointed postconviction counsel on November 26, 2019. The matter was then continued numerous times.

¶ 21    Relevant here, on June 4, 2020, our supreme court overturned *Coty I*, reasoning in part that, whereas *Miller* is premised on the transient characteristics of youthful offenders, those characteristics are "not shared by adults who are intellectually disabled." *People v. Coty*, 2020 IL 123972, ¶ 39 (*Coty II*).

¶ 22    In March 2022, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Therein, postconviction counsel certified that he communicated with defendant to ascertain his claims, examined the record, and would not be

amending the petition because "[defendant's] filing provides an adequate presentation of [his] claims."

¶ 23    The State filed a motion to dismiss the petition in December 2022, arguing that defendant failed to establish the required cause and prejudice to file a successive petition. In particular, the State argued that defendant's eighth amendment and proportionate penalties clause claims were foreclosed because he was well over 18 years old at the time of the offense. The State further noted that defendant could no longer rely on *Coty I*, as it had been overturned by our supreme court. The State advanced substantially similar arguments at a hearing on the motion to dismiss in April 2023.

¶ 24    On July 1, 2023, while the motion to dismiss was still pending, defendant, proceeding *pro se*, sent a letter to the circuit court, attaching several documents regarding his mental health and intellectual disability. In the letter, defendant claimed that he had also sent this information to postconviction counsel, but counsel told him he did not receive it.

¶ 25    On September 12, 2023, the circuit court issued a written order granting the State's motion to dismiss. The court, citing *People v. Dorsey*, 2021 IL 123010, ¶ 74, and its progeny, stated that "Illinois courts have consistently rejected successive post-conviction petitions for lack of cause" when young adult offenders raise *Miller*-based proportionate penalties clause claims. The court therefore found that defendant failed to establish cause to bring his proportionate penalties clause claim. The court further found that defendant's eighth amendment claim was meritless because, at 29 years old, he was not a youthful offender under *Miller*. Additionally, the court opined that defendant's reliance on either *Coty* decision was "mistaken," as *Coty I* was overturned by *Coty II*, and *Coty II* "cuts against [his] argument that his crime was committed because of a transient lack of brain development." Finally, the court ruled that defendant's trial and appellate counsels were not ineffective for failing to raise meritless challenges to the constitutionality of his sentence.

¶ 26    This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant contends that postconviction counsel provided unreasonable assistance by failing to amend his *pro se* successive postconviction petition's claim that "his *de facto* life sentence is unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution and the [e]ighth and [f]ourteenth amendments of the United States Constitution because he suffered from treatable mental illnesses." He argues that, pursuant to Rule 651(c), postconviction counsel was required to shape defendant's constitutional claims into proper legal format. According to defendant, postconviction counsel's failure to adequately set forth defendant's constitutional claims resulted in dismissal. Thus, defendant argues that remand is required for new second stage proceedings and the appointment of new counsel.

¶ 29    Before proceeding, we set forth the relevant legal principles which inform our analysis of this second stage dismissal.

A. The Post-Conviction Hearing Act

¶ 30    The Act allows a defendant to collaterally attack a conviction by asserting that it resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). However, the Act generally contemplates the filing of only one postconviction petition, and the filing of successive petitions is disfavored. *People v. Edwards*, 2012 IL 111711, ¶ 29.

¶ 31    Prior to filing a successive petition, a defendant must obtain leave of court. *Id.* ¶ 24. To obtain such leave, a defendant must establish cause as to why he did not bring the claims in an

earlier proceeding and prejudice. *People v. Robinson*, 2020 IL 123849, ¶ 42. If granted, the petition advances to the second stage, where counsel may be appointed to amend the petition. *People v. Harper*, 2013 IL App (1st) 102181, ¶ 33.

¶ 32    At the second stage, the State may move to dismiss the petition on any basis, including that the defendant failed to establish cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 26. To survive dismissal, the defendant must make a substantial showing of a constitutional violation. *People v. Pendleton,* 223 Ill. 2d 458, 473 (2006). The circuit court's ruling on a second-stage motion to dismiss is reviewed *de novo. People v. Johnson*, 2024 IL App (1st) 220419, ¶ 65.

¶ 33                              B. Reasonable Assistance of Counsel

¶ 34    Although postconviction counsel is routinely appointed at the second stage, there is no constitutional right to counsel in postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. Instead, the right to counsel is a matter of "legislative grace," as set forth in the Act. *Id.* Thus, a postconviction defendant is entitled only to the level of assistance granted by the Act, which is labeled a "reasonable" level of assistance. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). "Reasonable assistance" is a lower standard than the "effective assistance" to which a defendant is constitutionally entitled at trial and on direct appeal. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 50.

¶ 35     In evaluating whether postconviction counsel provided reasonable assistance, we are mindful that counsel's purpose is "not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *People v. Addison*, 2023 IL 127119, ¶ 19. To ensure that postconviction petitioners receive reasonable assistance, Rule 651(c) mandates specific duties that postconviction counsel are required to undertake in postconviction proceedings. *People v. Suarez*, 224 Ill. 2d 37,

42 (2007). Specifically, counsel is required to certify that he or she has (1) consulted with the petitioner to ascertain his contentions of deprivation of constitutional rights, (2) examined the record of the proceedings at the trial, and (3) made any amendments to the *pro se* petitions that are necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction counsel's certification of compliance with the rule "creates a rebuttable presumption that counsel provided the petitioner with a reasonable level of assistance, absent an affirmative showing in the record." *People v. Urzua*, 2023 IL 127789, ¶ 54.

¶ 36     The burden rests with the defendant to overcome the presumption of reasonable assistance by showing that counsel failed to substantially comply with the dictates of the rule. *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 26. The defendant may do so by*, inter alia*, showing that postconviction counsel did not make all necessary amendments to the *pro se* petition. See *People v. Turner*, 187 Ill. 2d 406, 412 (1999). Where counsel fails to comply with Rule 651(c), a petitioner need not show that the omission caused him or her prejudice. *Addison*, 2023 IL 127119, ¶¶ 35, 38. Regardless of whether the issues raised in the petition have merit, where postconviction counsel fails to render reasonable assistance, remand is required. *Suarez*, 224 Ill 2d. at 52.

¶ 37     However, postconviction counsel is not required to raise new claims not advanced in the defendant's *pro se* petition. *Pendleton*, 223 Ill. 2d at 476 (postconviction counsel may raise additional issues if he or she chooses, however, there is no obligation to do so); *People v. Collins*, 2021 IL App (1st) 170597, ¶ 40. In fact, counsel need not necessarily amend the *pro se* petition at all (*People v. Nesbitt*, 2023 IL App (1st) 211301, ¶ 37)), nor is counsel required to raise frivolous claims on the defendant's behalf (*Gallano*, 2019 IL App (1st) 160570, ¶ 30).

¶ 38     In *People v. Davis*, 156 Ill. 2d 149 (1993), our supreme court discussed the scope of postconviction counsel's duty under Rule 651(c). The court stated:

"The procedure demonstrates that it is the substance of the *petitioner*'s claims, in his initial post-conviction pleading, which, in the first instance, determines the fate of the petitioner's claims. The post-conviction court's determination concerning the merit of those claims is based solely upon the *petitioner*'s articulation of the same.

Post-conviction counsel is only required to investigate and properly present the *petitioner*'s claims. Had the legislature intended otherwise, it would, logically, have provided for the appointment of counsel prior to the filing of the original petition. Counsel's responsibility is to adequately present those claims which the *petitioner* raises." (Emphasis in original.) *Id.* at 163-164.

Both the scope of duties of appointed counsel under Rule 651(c) and counsel's compliance with the rule are subject to *de novo* review. *People v. Frey*, 2024 IL 128644, ¶ 21.

¶ 39                                    C. Arguments

¶ 40    Defendant contends that postconviction counsel provided unreasonable assistance by failing to amend his *pro se* petition claim that his "*de facto* life sentence is unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution and the Eighth and Fourteenth amendments of the United States Constitution because he suffered from treatable mental illnesses." He argues that based on his *pro se* petition, the record in this case, the documents he provided to postconviction counsel, and relevant caselaw, counsel should have amended the petition to claim that defendant's sentence was unconstitutional because he suffered not only from an intellectual disability but from documented mental disorders at the time of the offense. Defendant argues that his *pro se* petition clearly showed his intent to argue that his sentence was unconstitutional as applied to him based on his individual characteristics. Defendant maintains that postconviction counsel clearly understood defendant's intent in that regard, because he argued at

the hearing on the State's motion to dismiss that defendant was "different than the defendant in *Coty II*," and that defendant had "displayed rehabilitative potential."

¶ 41    Defendant points to the fact that counsel failed to append medical records that showed his low I.Q. and that he suffered from "another treatable mental illness" that was unknown to the sentencing court. It is defendant's contention that because postconviction counsel did not amend the *pro se* petition to raise the claim that defendant's sentence was unconstitutional and did not append documentation that supported that claim, that counsel guaranteed the dismissal of defendant's petition at the second stage.

¶ 42    We observe that defendant devotes the lion's share of his brief arguing the merits of his eighth and fourteenth amendment and proportionate penalties clause claims. Parsed throughout the argument section, defendant argues that his *pro se* postconviction petition raised the claim that his "*de facto* life sentence" was unconstitutional as applied to him under the eighth and fourteenth amendments. He points out that, in his petition, he argued that *Coty I* was still applicable law at the time he filed his petition and extended protections to individuals with mental disabilities similar to those offered to juveniles under *Miller v. Alabama,* 567 U.S. 460 (2012). Defendant acknowledges that *Coty I* has been overruled by *Coty II*, 2020 IL 123972, but argues nonetheless that *Coty II* did not proscribe an as-applied constitutional challenge to a *de facto* life sentence where the defendant has a treatable mental health condition.

¶ 43    Although defendant urges the validity of his constitutional claims, he ultimately faults post conviction counsel, in the first instance, for the court's rejection of those claims. He argues that "[b]ecause counsel did not make the proper amendments to [his] petition, his petition was dismissed." Properly framed, the issue before this court is whether postconviction counsel

rendered reasonable assistance to defendant as contemplated by Rule 651(c). We confine our analysis solely to that issue.

¶ 44    Here, there is no dispute that postconviction counsel filed a Rule 651(c) certification, giving rise to the rebuttable presumption of reasonable assistance. Defendant does not dispute that counsel complied with the first two requirements under the rule, consultation with the defendant and examination of the prior proceedings. Defendant's claimed deficiency with respect to representation points exclusively to the fact that counsel made no amendments to his *pro se* petition. Indeed, the record reveals that postconviction counsel, in addressing the court concerning the petition, stated that he intended no amendments or to supplement the defendant's *pro se* petition. In any case, defendant bears the burden to rebut the presumption of postconviction counsel's substantial compliance with the rule, which, based upon our review, he has failed to do.

¶ 45    Other than the fact that defendant did not prevail on his successive post conviction petition, he offers nothing to rebut the presumption that postconviction counsel's assistance was reasonable. It appears from our review of the record, the *pro se* petition and the trial court's order, that the court understood clearly defendant's as-applied claims but, largely in light of *Coty I*'s reversal and established caselaw regarding proportionate penalties clause claims, found defendant's postconviction claims not supported by law. Given the underlying basis of defendant's claims, no supplemental material regarding his mental capacity or I.Q. could alter the trial court's ultimate determination and none was required to adequately present defendant's contentions.

¶ 46    We recognize that defendant's *pro se* petition characterized him as having an "intellectual disability." He now asserts that postconviction counsel should have rebranded his claim as one based on a treatable mental illness. Regardless, given the status of *Coty I*, the case upon which

defendant largely relied, counsel's failure to recharacterize defendant's condition would have had no practical effect.

¶ 47    In support of his claim of unreasonable assistance, defendant cites *People v. Jennings*, 345 Ill. App. 3d 265 (2003), a case decided by our sister court in the Fourth District. In *Jennings*, the defendant claimed that his appointed postconviction counsel did not provide reasonable assistance as he failed to comply with the dictates of Rule 651(c). *Id.* at 267. The reviewing court, in reversing the trial court's dismissal of the petition, observed that postconviction counsel had not examined the record of proceedings as required by Rule 651. *Id.* at 271. Additionally, counsel improperly failed to amend the *pro se* petitioner's ineffective assistance claim to include grounds that could have been raised by trial counsel in a motion to reconsider an alleged sentencing disparity. *Id.* at 272-274. In reversing, the court reasoned that the letter from trial counsel to the defendant's mother, which postconviction counsel used to supplement the *pro se* petition, actually clearly suggested a disparate sentencing claim. *Id.* at 274.

¶ 48    We find *Jennings* distinguishable. First, although not necessarily dispositive on the issue of reasonable assistance, unlike here, postconviction counsel in *Jennings* did not file a Rule 651(c) certificate of compliance. Thus, the burden fell to the State to demonstrate compliance. Here, because postconviction counsel did file a certificate, the burden fell on defendant to rebut the presumption of reasonable assistance. Second, unlike in *Jennings*, there is no indication here that postconviction counsel was aware of a potential issue but failed to present it. Here, defendant's *pro se* petition set forth in remarkable detail the basis for his as-applied and proportionate penalties clause claims, citing in support *Miller*, *Coty I*, and *Coty II*, referencing emerging brain science, and discussing the need to treat individuals with mental illness the same as juveniles in making sentencing decisions. In *Jennings,* because postconviction counsel failed to include the disparate

sentencing issue in the postconviction petition, the trial court had no occasion to consider whether there had been a constitutional violation. Here, the issue of defendant's mental illness was included in defendant's *pro se* petition and urged as a basis under *Miller* and *Coty I*, for reconsideration of his sentence. The trial court considered the defendant's arguments, specifically recognizing that *Coty I* had been overruled by our supreme court, that defendant had failed to present cause for not bringing his proportionate penalties clause claim on direct appeal, and that trial counsel could not be ineffective for failing to argue applicability of *Coty I*, as it had not then been decided at the time of defendant's trial.

¶ 49    Here, defendant does no more than argue that counsel failed to amend the petition to set forth the proper legal arguments to support his claim. Based upon our review, defendant's claims were adequately presented in the *pro se* petition. Any amendments or supplements to the petition were not necessary to present the defendant's claims. Defendant has presented nothing to rebut the presumption of counsel's substantial compliance with Rule 651(c), and we therefore affirm the order of the trial court dismissing defendant's postconviction petition.

¶ 50                                III. CONCLUSION

¶ 51    For the reasons stated, we affirm the judgment of the circuit court.

¶ 52    Affirmed.