NOTICE

Decision filed 03/06/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200041-U

NO. 5-20-0041

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 13-CF-86 |
| | ) | |
| DERRICK TWARDOSKI, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and McHaney* concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Postconviction counsel provided unreasonable assistance and failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by failing to shape and support defendant's claims in counsel's amended postconviction petition.

¶ 2                                I. BACKGROUND

¶ 3   On May 10, 2013, defendant was charged with four counts of first degree murder in violation of section 9-1(a)(3) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(3) (West 2012)) for partially damaging a dwelling place of another in the course of committing arson which caused the death of B.O., L.O., K.O., and E.O. Because B.O., L.O., and K.O. were under the age of 12, the State sought natural life imprisonment for each count of first degree murder against those

_____

*Justice Wharton was initially assigned to this case. Upon his retirement, Justice McHaney was substituted and has reviewed the record and the parties' briefs.

victims. 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2012). It also sought natural life imprisonment on the first degree murder count against E.O. on the basis of there being multiple victims. *Id.*

¶ 4    On June 3, 2013, defense counsel averred that a *bona fide* doubt of defendant's fitness to stand trial existed and requested examination by a qualified professional. The court ordered a fitness examination with Daniel J. Cuneo, Ph.D. After Dr. Cuneo completed the examination and reported his findings, the court found defendant fit to stand trial.

¶ 5    On August 5, 2013, counsel filed a motion to preserve evidence. The motion contended that counsel was seeking an expert arson investigator, such investigator was necessary to mount a proper defense, and the investigator would need to examine the premises where the alleged arson occurred. Counsel therefore requested the court prevent the Village of Percy from demolishing the premises where the crime occurred. At a hearing the same day, counsel asserted that he would likely file a motion for funds to obtain an arson expert but believed such motion was premature because the State's investigation of the fire was not yet completed. On October 10, 2013, the court filed an order, barring any government agency from materially altering the premises without obtaining court approval.

¶ 6    The same day, the State filed a motion to consume DNA samples collected from various items of evidence. The motion averred that defense counsel did not agree to the consumption of such samples for the State's DNA testing. The court granted the State's motion on January 30, 2014, after a hearing in which the State and defense counsel agreed the defense's experts would oversee the testing.

¶ 7    On October 10, 2013, the State informed the court that the fire marshal intended to complete its arson report by the end of the month and anticipated it could provide the court and defense counsel with an expert report by the end of November. At the December 19, 2013, hearing

the State indicated that it provided defense counsel with the fire marshal's report.

¶ 8       On January 23, 2014, defense counsel informed the court that after his review of the arson investigation and consulting with defendant, they both agreed the court could release the premises to the owner. The court entered an order terminating the protective order and allowing the legal owners of the premises to tear down or otherwise dispose of the premises. The order further noted defendant was in court when defense counsel pronounced that defendant no longer needed preservation of the crime scene.

¶ 9       At the hearing on August 6, 2014, the State indicated defendant would be waiving his right to a jury trial on count I—which charged defendant with causing the death of K.O.—subject to a stipulated bench trial in exchange for dismissal of the other charges and the State not seeking natural life imprisonment. The court admonished defendant that the stipulated bench trial in this case entailed, *inter alia*, a stipulation of evidence with no witnesses, a waiver of his right to a jury trial, his right to confront his accusers, and that the trial court would determine his possible sentence for the Class X felony. Defendant indicated he understood each admonishment and stated that no one forced, threatened, or intimidated him to waive his right to a trial by a jury. Defendant also executed a written waiver of jury trial.

¶ 10      The State provided the following stipulation:

"[O]n May 10, 2013, the defendant, *** without lawful justification, started a residential dwelling, the dwelling of Matt and Natasha Owen at 810 West Almond in Percy, Randolph County, Illinois, on fire. In the course of committing that arson, it did partially or in actuality it totally damaged and destroyed the dwelling place of Matthew and Natasha Owen.

As a result of that arson, we would be prepared to offer evidence through

3

Dr. Raj Nanduri that [K.O.], a person and a child of Matthew and Natasha Owen, deceased as a result of injuries sustained in that fire."

¶ 11 Defense counsel stated that it had no evidence to present. After being informed of his right to remain silent or testify, defendant decided not to testify. Thereafter, the court found defendant guilty of first degree murder of K.O. and dismissed the remaining charges.

¶ 12 The sentencing hearing was held on October 3, 2014. Among others, Dr. Jagannathan Srinivasaraghavan, a forensic psychiatrist who interviewed defendant, testified. He stated that defendant began treatment with a mental health professional when he was 13 years old due to suicidal and homicidal tendencies, and had been treated for mental health issues thereafter, including one month before this incident. Dr. Srinivasaraghavan also testified that defendant was physically and emotionally abused by his stepfather and grandfather from the age of 3 until defendant was about 13 years old. Defendant began abusing alcohol when he was 6 or 7 years old and completed rehab once by the time he was 17 years old. Defendant also mentioned to Dr. Srinivasaraghavan that he had abused a variety of drugs, including marijuana, cocaine, LSD, and psychedelic mushrooms. After an incident in which defendant jumped from a moving vehicle and incurred multiple skull fractures and two severe subdural hematomas, defendant suffered from memory problems and difficulty with higher functioning skills like planning and problem-solving. Dr. Srinivasaraghavan opined that defendant was mentally ill and diagnosed defendant with major depressive disorder, alcohol dependence, and intellectual deterioration secondary to head trauma. He averred that defendant faced problems with impulse control and that his head injury and alcohol dependence exacerbated the existing personality disorder.

¶ 13 The court sentenced defendant to 53 years' imprisonment. In doing so, the court noted that the community was angry when this event happened. It further stated, "Let the word go out from

4

the sentence today that—the outrage of the Court and the—the community of Randolph County that if someone commits one of these reprehensible acts, that they will pay the price."

¶ 14      On October 29, 2014, counsel filed a motion to reconsider sentence. On November 7, 2014, defendant filed a *pro se* motion to withdraw guilty plea and vacate sentence. The same day he also filed a notice of appeal. The State moved to strike defendant's motion to withdraw guilty plea and—citing *People v. Weaver*, 2013 IL App (3d) 130054—argued that a stipulated bench trial was not subject to Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013). The State also filed a motion to strike defendant's notice of appeal, because a motion to reconsider sentence remained pending in the case at the time.

¶ 15      On November 21, 2014, the court granted both of the State's motions and denied defendant's motion to reconsider sentence. Defendant appealed, arguing that his stipulated bench trial was tantamount to a guilty plea to which the court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). He further argued that the court considered improper factors in imposing his sentence. This court found that defendant's stipulated bench trial was tantamount to a guilty plea, but after finding sufficient admonishments were provided to defendant regarding the stipulated bench trial affirmed defendant's conviction and sentence. *People v. Twardoski*, 2018 IL App (5th) 140617-U, ¶¶ 22, 36.

¶ 16      On April 2, 2019, defendant filed a *pro se* postconviction petition. The petition alleged—*inter alia*—that "anywhere near Randolph County" was hostile towards defendant and, therefore, proceeding in Randolph County violated his constitutional rights. The petition also alleged ineffective assistance of trial counsel in that counsel failed to interview witnesses or investigate defendant's case, misled defendant and his family, failed to read tendered discovery or make any preparations for trial, pressured defendant into the stipulated bench trial, failed to call any

5

mitigating witnesses during the sentencing hearing although they were present and willing to testify, and allowed defendant to suffer physical and emotional abuse by law enforcement personnel. Defendant further alleged that he believed there was evidence in the materials obtained through discovery that supported a defense and trial counsel was ineffective for failing to assert that defense at trial.

¶ 17 Defendant attached three affidavits to his petition, his own affidavit and two from his mother, Cathy Butler. Butler attested that she was told the victims' family members were going into the house and messing with evidence. She further stated the witnesses and defense counsel told lies. Butler contended that defendant did not understand a stipulated bench trial was a guilty plea and that defense counsel misinformed defendant as such. She did not believe counsel "did right by [her] son" and felt the case should not have been in the same county or state in which it occurred. Butler also averred defendant was only allowed six people in the courtroom during sentencing while the victims' family took up almost the whole courtroom.

¶ 18 Defendant's affidavit stated he did not commit the crime. He complained of mistreatment at the jail. He attested that he informed counsel about the mistreatment and that counsel "never did anything about it." Defendant contended that it was only after a year of torture that he agreed to the stipulated bench trial. He stated that his trial counsel advised him that he would not be pleading guilty by agreeing to the stipulated bench trial and defendant could keep fighting if he lost and went to prison. The affidavit also stated that counsel advised defendant he would only get 20 or 30 years' imprisonment if found guilty.

¶ 19 The circuit court appointed postconviction counsel, Jordan Gremmels. On October 23, 2019, postconviction counsel filed an amended postconviction petition. It alleged—*inter alia*—ineffective assistance of trial counsel for (1) failure to preserve any meaningful defense by

6

obtaining an "independent expert to review the fire, causes of deaths, etc." although defendant requested counsel do so; (2) failure to delve into defendant's troubled past during sentencing to provide additional factors in mitigation; (3) failure to call any mitigating witnesses during sentencing; (4) coercing defendant into agreeing to the stipulated bench trial; and (5) failure to file a motion to change venue based on the biased jury pool of Randolph and Perry Counties where the offense took place. Counsel also filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 20    The State filed a motion to dismiss on November 7, 2019. The State argued, *inter alia*, that defendant failed to provide affidavits or other documents to support his allegation that the outcome of the case or sentencing would have been different, even if trial counsel would have completed the tasks allegedly requested by defendant.

¶ 21    A hearing on the State's motion to dismiss was held on December 4, 2019. At the outset, postconviction counsel asked the court for leave to file an amended postconviction petition to attach the three affidavits that accompanied defendant's *pro se* postconviction petition. Postconviction counsel filed the amended petition with three affidavits attached on December 20, 2019. The allegations in the amended petition remained unchanged.

¶ 22    At the hearing on the motion to dismiss, the State argued defendant could not meet the prejudice requirement. It stated that, as demonstrated by testimony at the sentencing hearing, the evidence in the matter was overwhelming. Instead of potentially being convicted for the murder of four children and being subjected to a mandatory life sentence, defendant chose to proceed with a stipulated bench trial, knowingly and voluntarily. The State also argued defendant's allegation that he was coerced into agreeing to a stipulated bench trial was refuted by the record where defendant told the court that he was not forced, threatened, or promised anything beyond that stated

7

in court in exchange for his decision to waive his right to a jury trial and proceed with a stipulated bench trial.

¶ 23    The State argued that defendant failed to support his allegation that counsel was ineffective for failing to call witnesses at the sentencing hearing, as no affidavit filed by defendant indicated who would testify or what the witnesses would testify about. It also contended that defendant could not meet prejudice regarding his claim that counsel should have delved into his troubled upbringing because Dr. Srinivasaraghavan testified about the alleged abuse and upbringing of defendant.

¶ 24    With respect to hiring experts, the State contended that trial counsel hired Dr. Srinivasaraghavan and another DNA expert who was present during the DNA testing in this case. It further argued that defendant's venue claim was not supported by an affidavit indicating that defendant wanted a change of venue or that a change of venue was required in this case. It also argued that defendant could not establish prejudice because filing the motion before jury selection would have been premature and the court could not have determined whether the jury pool was impartial—which is required to change venues.

¶ 25    Postconviction counsel argued that he alleged there were witnesses present at the hearing ready to testify but trial counsel failed to call them. Postconviction counsel stated, "[he was] not sure how that's *** not ineffective assistance of counsel." He further stated, "with [defendant's] claims against [trial counsel] and the ineptness that [defendant] suffered as a result of his representation, I think it's impossible to see that [defendant] may have gotten a fair trial or that [trial counsel] was ever prepared to go to trial due to the things we've alleged." Postconviction counsel argued only trial counsel could refute the claims of ineffectiveness.

¶ 26    On January 31, 2020, the court granted the State's motion to dismiss. The court determined

that the allegations of ineffective assistance of trial counsel were unsupported and did not satisfy the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668 (1984). It additionally noted Dr. Srinivasaraghavan's testimony at the sentencing hearing regarded the very issues defendant now claimed were not addressed at sentencing. Defendant timely appealed.

¶ 27                                   II. ANALYSIS

¶ 28     The Post-Conviction Hearing Act (Act) provides a three-stage process by which defendants may collaterally challenge their convictions and/or sentences for substantial violations of their federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). At the first stage, a court will dismiss a petition if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If a petition is not dismissed, the court advances the petition to second-stage proceedings and may appoint counsel for an indigent defendant. *People v. Cotto*, 2016 IL 119006, ¶¶ 26-27. At this time, appointed counsel may amend the postconviction petition, and the State may file a motion to dismiss. *Id.* ¶ 27. If the court finds the petition and any accompanying documents made a substantial showing of a constitutional violation, it will advance the petition to a third-stage evidentiary hearing. *Id.* ¶ 28. If such showing is not made, the petition may be dismissed. *Id.*

¶ 29     Because the right to counsel in postconviction proceedings is statutory rather than constitutional, defendant is entitled to the level of assistance guaranteed by the Act, which is reasonable assistance. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 29. Reasonable assistance is less than the constitutionally required effective assistance of counsel. *Cotto*, 2016 IL 119006, ¶ 45. To ensure that defendants receive the level of assistance required by the Act, Rule 651(c) imposes specific duties on counsel. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Rule 651(c) requires postconviction counsel to (1) consult with petitioner to ascertain his or her contentions of

9

deprivation of constitutional rights, (2) examine the record of the proceedings at the trial, and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 30    Where, as here, counsel files a Rule 651(c) certificate, there is a presumption that the petitioner received the representation that the rule requires. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. This presumption, however, can be rebutted by the record. See *People v. Johnson*, 154 Ill. 2d 227, 248-50 (1993); *People v. Perkins*, 229 Ill. 2d 34, 52 (2007).

¶ 31    Defendant does not dispute that counsel met the first two requirements of Rule 651(c) but contends counsel failed to amend to the petition to adequately present his contentions. Specifically, defendant contends that postconviction counsel failed to shape and support the claims that trial counsel was ineffective for failing to (1) obtain independent arson experts,[1] (2) delve into defendant's past and call witnesses to testify on defendant's behalf at the sentencing hearing, and (3) request a change of venue.

¶ 32    Postconviction counsel need not file an amended petition in every case. *Wallace*, 2018 IL App (5th) 140385, ¶ 30. However, postconviction counsel must make amendments that "are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). To adequately present a claim of ineffective assistance of counsel, the petition must allege counsel's performance fell below an objective standard of reasonableness and counsel's errors resulted in prejudice. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. To establish prejudice, "defendant must demonstrate 'a reasonable probability that, but for counsel's

---

[1]In defendant's opening brief, he included trial counsel's failure "to present evidence or preserve any meaningful defense" as another claim that postconviction counsel failed to properly shape and support. However, his brief and reply brief only present an argument regarding the claim that trial counsel failed to obtain an arson expert. Accordingly, any argument concerning trial counsel's failure to present other evidence or preserve a meaningful defense generally is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.").

unprofessional errors, the result of the proceeding would have been different.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Strickland*, 466 U.S. at 694). The failure to establish either prong precludes a finding of ineffectiveness. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 33    The amended petition here lacks any allegations or facts indicating that trial counsel's actions resulted in prejudice. Instead of alleging prejudice or facts to determine prejudice, counsel used ambivalent language indicating a possibility of prejudice.

¶ 34    Regarding the ineffectiveness claim based on the failure to obtain an arson expert, postconviction counsel alleged that an arson expert "*may* have rebutted that of the [p]laintiff's experts." (Emphasis added.) He also failed to provide any facts regarding what information such expert could have provided and how that information would have affected defendant's case. Postconviction counsel used similar language for the other claims of the ineffectiveness in stating, "Had the defendant not known the actual prejudice he faced from a Randolph County jury, he *may* have not been coerced into waiving his right to a trial by jury" and delving into defendant's past during the sentencing hearing "*may* have added factors in mitigation." (Emphases added.) This speculative language is insufficient to allege prejudice. See *People v. Johnson*, 2021 IL 126291, ¶ 55.

¶ 35    Postconviction counsel also failed to—even generally—allege prejudice from trial counsel's failure to present additional mitigating witnesses at defendant's sentencing hearing. Factual allegations regarding the same were also lacking where postconviction counsel alleged defendant's mother would testify but failed to indicate what her testimony would have substantially added such that the outcome of the sentencing hearing would have been more favorable to defendant.

11

¶ 36     Postconviction counsel—at most—alleged that it was possible trial counsel provided ineffective assistance. The amended petition was void of any facts or allegations to conclude there was a reasonable probability that but for these alleged errors, defendant would not have agreed to the stipulated bench trial or that the outcome of the stipulated bench trial or sentencing hearing would have been different. Because prejudice is an essential element of an ineffective assistance of counsel claim, postconviction counsel failed to shape defendant's ineffective assistance of counsel claims in proper legal form. *People v. Turner*, 187 Ill. 2d 406, 413 (1999); *People v. Dixon*, 2018 IL App (3d) 150630, ¶¶ 16, 20; *People v. Jennings*, 345 Ill. App. 3d 265, 273 (2003); *People v. McDonald*, 2018 IL App (3d) 150507, ¶¶ 29-31. We therefore find postconviction counsel failed to comply with Rule 651(c), reverse, and remand for the appointment of new postconviction counsel who should comply with Rule 651(c) and amend the petition as necessary.

¶ 37     Although we find noncompliance with Rule 651(c) based on counsel's failure to properly allege ineffective assistance of trial counsel, we briefly address defendant's other contention that counsel provided unreasonable assistance by failing to support defendant's claims. "The mere allegation of a constitutional violation is insufficient to justify an evidentiary hearing ***." *Turner*, 187 Ill. 2d at 415. "An evidentiary hearing will be held only where the allegations of the postconviction petition make a substantial showing that the defendant's constitutional rights have been violated [citations], and the petition is supported by affidavits, records, or other evidence or explains why the same are not attached [citation]." (Internal quotation marks omitted.) *Johnson*, 154 Ill. 2d at 239-40. Accordingly, adequate representation of petitioner's contentions includes attaching supporting evidence or affidavits. See *id.* at 243. Given postconviction counsel's argument at the hearing on the State's motion to dismiss that defendant's claims were based on evidence outside of the record, such evidence would be pivotal here.

12

¶ 38    However, while adequate representation requires counsel to provide support for the petition's claims, reasonable assistance does not require counsel "to engage in a generalized fishing expedition in search of support for claims raised in a petition." *Id.* at 248. It is defendant's responsibility to provide counsel with the information necessary to support his or her claims. *Id.* at 247-48. This is true even where postconviction counsel adds new claims to the amended petition. See *People v. Moore*, 189 Ill. 2d 521, 542-43 (2000) (the record did not rebut the presumption that postconviction counsel adequately presented an ineffectiveness claim based on fingerprint and hair evidence that was not raised in the *pro se* petition where defendant did not provide additional information regarding the existence of fingerprint and hair experts who would have challenged the State's findings). Accordingly, we hasten to emphasize that on remand defendant should provide new postconviction counsel with the information necessary to support his claims, and counsel should attach such evidence, if any exists.

¶ 39                                  III. CONCLUSION

¶ 40    For the foregoing reasons, we reverse the dismissal of the amended postconviction petition and remand for further proceedings with the appointment of new postconviction counsel.


¶ 41    Reversed and remanded.